LENORA F. HARRISON, ADMINISTRATRIX OF ZANE DALTON, DECEASED, V. R. C. CORLEY, JR., AND SOUTHEASTERN AIR SERVICE, INC., TRADING AND DOING BUSINESS AS PARTNERS IN THE NAME OF SOUTHEASTERN AIR SERVICE, INC.—ASSOCIATE BASE.

(Filed 20 March, 1946.)

**1. Process § 8d: Constitutional Law § 20b—**

Whether service of process on a foreign corporation by service on the Secretary of State, G. S., 55-38, is valid depends upon whether the corporation was engaged in business activities in this State at the time the cause of action arose, which is a question of due process of law under the Federal Constitution to be determined in harmony with the decisions of the Supreme Court of the United States.

**2. Process § 8d—**

Whether a foreign corporation is "doing business" in this State so as to subject the corporation to service of process by service on the Secretary of State, G. S., 55-38, is not susceptible to an all-embracing rule but must be determined by the facts of each case under the general rule that it is "doing business" here if it transacts some substantial part of its ordinary business in this State, the quality and nature of its activities rather than a mechanical and quantitative appraisal thereof being determinative.

**3. Same—Defendant corporation held "doing business" in this State so as to subject it to service of process under G. S., 55-38.**

Defendant foreign corporation was engaged in operating a chain of airports. The individual defendant negotiated leases of two airports in this State, which were approved by the corporation. Thereafter the individual defendant and the corporation entered into a contract under which the corporation agreed to "lease" to the individual certain airplanes of the type and quantity it deemed advisable, to make major repairs, to overhaul and inspect the engines periodically, to provide liability insurance, and reserved the right to ground planes it deemed not airworthy. The contract required the individual to operate the airport under the name of the corporation and according to its general plan, to give his full time to the business, to keep records on the corporation's forms subject to inspection by the company at all times, to hold the corporation harmless for his acts and the acts of his agents and employees, to furnish surety bonds for himself and each of his employees, to use only the corporation's planes, to solicit repair work and act as dealer for the corporation's supplies and equipment on a commission basis, and not to cancel or assign a lease on an airport without the written consent of the corporation. A representative of the corporation in fact visited the individual from time to time and inspected the records. There were two other airports operated in this State in the name of the corporation. *Held:* The corporation was "doing business" in this State so as to subject it to the jurisdiction of our courts, and service of process on it under G. S., 55-38, by service on the Secretary of State, was valid.

**4. Same—**

When a corporation comes into this State and "does business" herein without domesticating or appointing a process agent, it accepts the provisions of G. S., 55-38, as to service of process.

**5. Same—**

When a foreign corporation accepts the provisions of G. S., 55-38, by engaging in business here without domesticating or appointing a process agent, it may not withdraw its assent by departing this jurisdiction so as to defeat a suit instituted on a cause which arose while it was engaged in business here.

APPEAL by defendant Southeastern Air Service, Inc., from *Bobbitt, J.,* at January Term, 1946, of McDOWELL.

Civil action to recover damages for wrongful death, heard on motion by the corporate defendant, made on special appearance, to quash the summons herein and to invalidate the attempted service thereof.

The airplane accident which caused the death of plaintiff's intestate, a student pilot, occurred on 31 December, 1944. The appellant, an undomesticated foreign corporation, on 19 April, 1945, withdrew all of its property then in the State and discontinued the operation of the four airports located in this State, theretofore maintained in its name. It never had a process agent in this State.

Summons herein, issued 10 December, 1945, was served on the appellant under G. S., 55-38, by leaving a copy of the summons and complaint with the Secretary of State who mailed the same to the defendant.

The appellant made a special appearance and moved to quash the summons and dismiss the action for want of jurisdiction for that (1) defendant is an undomesticated foreign corporation which has no process agent in this State, (2) defendant, at the time of said attempted service, had no property within the State and was not engaged in business therein, (3) defendant is not now and has never been engaged in business in North Carolina, and (4) defendant Corley is not its officer, agent or employee upon whom service of summons may be had. The motion was supported by affidavits which appear of record.

After considering the affidavits filed and oral testimony offered, the court below found the facts as set out in its judgment and concluded that appellant between October, 1944, and April, 1945, and particularly on 31 December, 1944, "was doing business within the State of North Carolina, and that the service of process upon the Secretary of State was a valid service of process upon the corporate defendant." Said defendant excepted and appealed.

*Paul J. Story and Proctor & Dameron for plaintiff, appellee.*
*Edwin S. Hartshorn and W. R. Chambers for defendant Southeastern Air Service, Inc., appellant.*

BARNHILL, J. The merits of plaintiff's claim are not presented for review. The sole question posed for decision is whether the appellant,

a foreign corporation, has been brought into court by a valid service of process. If not, the court is without jurisdiction and the action as to it must be dismissed.

The answer depends upon whether appellant, on 31 December, 1944, the day the alleged liability for damages was incurred, was engaged in business activities within this State. In the last analysis the question is one of due process of law under the Constitution of the United States, U. S. Const., Amend. 14 (1), which must be determined in harmony with the decisions of the Supreme Court of the United States. *American Asphalt Roof Corp. v. Shankland,* 60 A. L. R., 986, and cases cited.

No all-embracing rule as to what is "doing business" has been formulated. The question is one of fact and must be determined largely according to the facts of each individual case rather than by the application of fixed, definite and precise rules. *Timber Co. v. Insurance Co.,* 192 N. C., 115, 133 S. E., 424; *C. T. H. Corporation v. Maxwell, Comr. of Revenue,* 212 N. C., 803, 195 S. E., 36.

The general rule is that when a foreign corporation transacts some substantial part of its ordinary business in a State it is doing business therein within the meaning of the due process clause of the Constitution so as to warrant the inference that the corporation has subjected itself to the local jurisdiction. *Schoenith, Inc., v. Manufacturing Co.,* 220 N. C., 390, 17 S. E. (2d), 350; *Commercial Trust v. Gaines,* 193 N. C., 233, 136 S. E., 609; *C. T. H. Corporation v. Maxwell, Comr. of Revenue, supra; Parris v. Fischer & Co.,* 219 N. C., 292, 13 S. E. (2d), 540; *Peoples Tobacco Co. v. Am. Tobacco Co.,* 246 U. S., 79, 62 L. Ed., 587; *International Shoe Co. v. Washington,* 90 L. Ed., 109; *Consolidated Textile Corp. v. Gregory,* 289 U. S., 85, 77 L. Ed., 1047; *St. Louis S. W. R. Co. v. Alexander,* 227 U. S., 218, 57 L. Ed., 486; *American Asphalt Roof Corp. v. Shankland, supra.*

Whether due process is satisfied must depend upon the quality and nature of the activities in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure, rather than upon a mechanical and quantitative appraisal thereof. *International Shoe Co. v. Washington, supra.*

Applying these controlling general principles to the uncontroverted facts appearing on the face of this record, it clearly appears that appellant's "presence" within the State on 31 December, 1944, is fully established.

Perhaps no one circumstance is sufficient to sustain the finding of the court below. It is the combination of facts and circumstances *en masse* that makes out a case of "doing business" in this State.

The appellant operates what is known as the associate base plan of Southeastern Air Service, Inc.

Prior to 15 September, 1944, Corley was employed by the company as a flight instructor at its air bases in states other than North Carolina. Shortly thereafter he began negotiation for leases upon airports located at Marion and Morganton in the State of North Carolina. He consulted with the company in respect thereto and the lease contracts were examined and approved by the company. Thereupon Corley and the company entered into the contract which appears of record "leasing" certain airplanes to Corley "to the mutual financial benefit and advantage of both the Company and the Operator."

It is apparent from a reading of the contract that in preparing it there was a studied and somewhat labored attempt to refute any suggestion of agency or employment which would impose any liability upon the company for the negligence or other dereliction of Corley and to give it the appearance of a simple lessor-lessee agreement. It was necessary, however, for the company to impose certain terms and conditions which tend to disclose the real nature of the agreement.

Corley was required to install and carry out "The Associate Base Plan of Southeastern Air Service, Inc." and "in carrying on his business on the airport herein referred to, will use and operate under the name of Southeastern Air Service, Inc., Associate Base." In so doing he was required to devote his full time to said business and to make every effort to use the airplanes furnished to the maximum extent permissible, consistent with available business and safe operation of said airplanes. The company agreed to "furnish to the Operator the number and type of airplane which in its judgment and experience is most suitable to be used by the Operator in his flight operations on the airports," and at its own expense to make major repairs to any component part of the aircraft when such repairs require the removal of said component parts from the aircraft; to provide "in the name of the Company and the Operator" as the interest of the parties shall appear, public liability insurance with limits of $20,000 and $40,000, passenger insurance and property damage insurance with a limit of $10,000. The company likewise agreed to make at its own expense "top overhauls of engines after approximately 250 hours of use and major overhauls of engines after approximately 500 hours of use" and to replace any faulty or worn part or parts or pay the cost of such replacements when made by the operator after authorization by the company.

The company reserved the right "to ground any airplane which in its opinion at the time of any such inspection is not airworthy until such plane has been placed in an airworthy condition to the satisfaction of the Company," and required Corley to "keep full and complete records on forms prescribed and furnished by the Company showing all flying time and other pertinent information concerning each of the airplanes

furnished." All such records and forms were subject to inspection by the company at any and all times.

Corley was required to "hold the Company harmless for any and all acts of the Operator, his agents, servants, and/or employees in the control and operation of said airport"; to comply with all applicable laws, rules, and regulations governing the operation of airplanes; to furnish surety bond in favor of the company for himself and each of his employees; to use in his commercial operations on the airport or airports only the plane or planes furnished by the company; to devote his full time to said business; to solicit for the company, on a commission basis, overhaul and repair work on all aircraft and engines based on the airport and from all other prospective customers for aircraft and engine work with whom he might come in contact, and "from time to time and whenever possible solicit such other business for the Company as the Company is able to handle," on a commission basis.

Corley was bound not to assign the contract and not to cancel or assign his lease on the airport without the written consent of the company. Should he decide to cancel or terminate his lease he was required to furnish the company a copy thereof and to give it the option of accepting an assignment or, if not assignable, to aid the company to obtain a lease on the airports upon the same terms and conditions under which Corley leased the same.

The company agreed to appoint Corley dealer for whatever parts, supplies, material, and equipment it may from time to time distribute, on a commission basis, and bound Corley not to sell or solicit the sale of competitive products not handled by the company.

A representative of the company in fact went to the office of Corley in North Carolina from time to time and checked the records he was required to keep and inspected the airplanes and equipment.

In addition to the airport at Marion and the one at Morganton there were operated in North Carolina in the name of the corporate defendant two other airports, one at Wadesboro and one at Rockingham.

Looking through the form to the substance, it is apparent more than the mere relationship of lessor-lessee was contemplated. If that was all that was intended, why should the company furnish liability insurance or require surety bonds of Corley's "employees"; why such care to provide complete control over his activities and bind him to use only airplanes and equipment furnished by the lessor, and to "tie up" the leases granted in his name; why should the "lessor" require the "lessee" to operate in the name of the "lessor" and thus represent to the public at large that it was the owner and operator of the airports? These and other questions raised by a mere statement of the facts make the answer self-evident. Appellant was engaged in the business of operating in this

State a chain of airports in furtherance of the general scheme or plan of its organization, a part and parcel of the activities for which it was created.

Thus the appellant, over a period of time, enjoyed the privilege of having four airports maintained and operated in this State in its name as a part of the plan of operation which forms the basis of the objectives for which it was created. In so doing it enjoyed the benefits and protection of the laws of this commonwealth. It thereby subjected itself to the jurisdiction of the courts of this State for the purpose of litigating liabilities created during its stay here.

The provisions for the service of summons, G. S., 55-38, were a condition on which it was allowed to do business, accepted by it when it entered the State and engaged in business here without domesticating or appointing a process agent. *Anderson v. Fidelity Co.,* 174 N. C., 417, 93 S. E., 948; *International Shoe Co. v. Washington, supra.*

It cannot, by the simple expedient of closing shop and departing this jurisdiction, withdraw that assent so as to defeat a suit instituted on a cause of action which arose while it was engaged in business here. *Fisher v. Insurance Co.,* 136 N. C., 217; *Sisk v: Motor Freight, Inc.,* 222 N. C., 631, 24 S. E. (2d), 488; *Highway Comm. v. Transportation Corp.,* 225 N. C., 198; *International Shoe Co. v. Washington, supra,* and cases cited; 45 A. L. R., 1442; Anno., p. 1447.

The judgment below is
Affirmed.