Robert M. HARRIS, Plaintiff,

v.

DEERE & COMPANY, Defendant.

Civ. No. 503.

United States District Court,
E. D. North Carolina, Wilson Division.

Feb. 15, 1955.

---

W. L. Thorp & W. L. Thorp, Jr. (of Thorp & Thorp), Rocky Mount, N. C., Chauncey H. Leggett (of Leggett & Taylor), Tarboro, N. C., for plaintiff.

Hugh M. Dorsey, Jr. (of Jones, Williams, Dorsey & Kane), Atlanta, Ga., Robert C. Howison, Jr. (of Joyner & Howison), Raleigh, N. C., for defendant.

GILLIAM, District Judge.

Action to recover damages for injuries sustained by plaintiff when a tractor manufactured by defendant overturned on him. Plaintiff is a resident of North Carolina, defendant is an Illinois corporation and jurisdiction is based on diversity of citizenship. The accident happened in North Carolina.

Summons was served on the North Carolina process agent of John Deere Plow Company of St. Louis, a

Missouri corporation, defendant's wholly owned sales subsidiary. Defendant moved to dismiss for lack of jurisdiction or to quash service, on the ground that it is not doing business in North Carolina and its subsidiary is not its agent for service of process. Defendant also moved to dismiss because of improper venue, but this objection has no merit since suit was brought in the district of plaintiff's residence. 28 U.S.C.A. § 1391(a).

From the complaint and affidavits of the parties the following facts appear. The defendant is the second largest company in the agricultural equipment business in the United States. Its charter empowers it to manufacture and sell agricultural machinery in any and all of the states and territories of the United States. It distributes the products of fourteen factories through twenty subsidiary corporations, all of which have "Deere" or "John Deere" in their corporate names. The subsidiary directly involved here, John Deere Plow Company of St. Louis, maintains a branch office in Atlanta, Georgia, which contracts with and sells tractors and other farm equipment to dealers in North Carolina for resale to users of such equipment.

The defendant parent corporation owns and votes all of the stock of the subsidiary and elects its directors, a majority of whom are also directors or officers of defendant. The parent and subsidiary have the same president. Four of the subsidiary's nine officers are officers or directors of the parent. Through these officers and directors the parent completely controls and directs the policies and business of the subsidiary and integrates its activities into the entire Deere organization. The subsidiary is referred to in the parent's 1953 annual report to stockholders as one of its "Branch Houses".

Despite the control exercised by the parent, the separate corporate entity of the subsidiary is observed. The subsidiary buys products of the parent and sells them to its dealers. The subsidiary buys some farm implements and equipment from firms other than the parent. The parent and subsidiary have their own separate employed personnel, keep separate books and accounts and file separate federal income tax returns. Combined financial statements of defendant and all its subsidiaries are published in its annual reports. The percentage of dollar volume of farm equipment manufactured by the defendant and sold to its subsidiaries in 1954 was 93.1 and in 1953 was 93.5.

Plaintiff's cause of action is founded on the alleged negligent manufacture and design of a tractor which was distributed through John Deere Plow Company of St. Louis to a retail dealer in North Carolina and sold by him to plaintiff's employer. Plaintiff, driving the tractor, was attempting to pull another tractor out of the mud when his tractor reared up and fell over on him, inflicting serious permanent injuries.

The fundamental law of the case is clear. The Court must have jurisdiction in personam of the defendant in order to entertain this action and render judgment. In the absence of a waiver of service, jurisdiction in personam requires valid service of process within the territorial limits of North Carolina. Federal Rules of Civil Procedure 4(f). Rule 4(d) (3) and 4(d) (7), 28 U.S.C.A., the latter incorporating by reference N.C.General Statute, § 1–97, designate the agents upon whom service may be made, but an additional element of valid service on a foreign corporation, long required by both federal and North Carolina law, is that the corporation conduct or carry on activities within the State sufficient to constitute "doing business" therein. Lafayette Insurance Co. v. French, 18 How. 404, 59 U.S. 404, 15 L. Ed. 451; Philadelphia & Railroad Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95; Lunceford v. Commercial Travelers' Mut. Accident Association, 190 N.C. 314, 129 S.E. 805; Lambert v. Schell, 235 N.C. 21, 69 S.E.2d 11.

In a diversity action, such as this, the question whether the defendant is doing business within the state and is,

therefore, subject to service of process is in the first instance a question of state law. Kelley v. Delaware, L. & W. R. Co., 1 Cir., 170 F.2d 195; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179; Canvas Fabricators, Inc., v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485; Partin v. Michaels Art Bronze Co., Inc., 3 Cir., 202 F.2d 541. If this were not so, varying results might be obtained by resort to the federal rather than the state courts. Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079.

An affirmative answer to the state law question then presents the constitutional test of the state law's validity under the due process clause of the Fourteenth Amendment. Bomze v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33; Harrison v. Corley, 226 N.C. 184, 37 S.E.2d 489.

North Carolina requires every foreign corporation having property or doing business in the State to appoint a process agent in North Carolina, and in case of failure to appoint such agent, process may be served on the Secretary of State. N.C.General Statutes, § 55–38. Service may also be made on an officer, managing or local agent of a foreign corporation doing business in North Carolina. If the corporation has property, or the cause of action arose, or the plaintiff resides in the State. N.C.General Statutes, § 1–97; Lambert v. Schell, 235 N.C. 21, 69 S.E.2d 11.

■ "Doing business in the state" means engaging in, carrying on, or exercising in North Carolina some of the things or some of the functions for which the corporation was created. Troy Lumber Co. v. State Sewing Machine Corp., 233 N.C. 407, 64 S.E.2d 415. Each case must be decided on its own facts. State Highway & Public Works Commission v. Diamond S. S. Transportation Corp., 225 N.C. 198, 34 S.E.2d 78. "in the last analysis the question is one of due process of law under the Constitution of the United States * * *." Harrison v. Corley, 226 N.C. 184, 186, 37 S.E.2d 489, 491.

Defendant insists that it has no agent in this State and is not and was not doing business in North Carolina. Plaintiff, on the other hand, says that defendant is and was doing business here through John Deere Plow Company of St. Louis, its wholly owned subsidiary, which is either an instrumentality or adjunct of defendant or the latter's sales and distribution agent. Of course, if plaintiff is correct in this argument, service on the subsidiary's process agent is service on the defendant.

A number of considerations recognized as material in the International Shoe Company and other cases appear to favor plaintiff's position.

Plaintiff is a resident of North Carolina and the cause of action arose here. International Shoe Co. v. State of Washington, 326 U.S. 310, 317, 319, 66 S.Ct. 154, 90 L.Ed. 95. In view of defendant's control of the subsidiary through stock ownership, and the common officers and directors of the two corporations, service on the subsidiary's process agent would be certain to give defendant actual notice of the suit, and did so in fact. Travelers Health Association v. Com. of Virginia ex rel. State Corp. Comm., 339 U.S. 643, 650, 70 S.Ct. 927, 94 L.Ed. 1154.

An estimate of the inconveniences to the defendant in trial here as compared with Illinois reveals no serious hardship on the defendant, such as would make it unreasonable to require defendant to defend this suit in North Carolina. International Shoe Co. v. State of Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95. As Justice Black said in his separate opinion in Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331, the defendant does not deny that it could be subjected to this suit in a federal district court in its home state, and therefore the real question is: "in what federal district court does the fair administration of justice require that this lawsuit be tried?" Id. 345 U.S. at page 671, 73 S.Ct. at page 905. The inconveniences to plaintiff of trial in Illinois are relevant in this connection. Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33, 35.

If we apply a "practical, nontechnical, business standard" of doing business, United States v. Scophony Corp., 333 U. S. 795, 810, 68 S.Ct. 855, 863, 92 L.Ed. 1091, it is obvious that the defendant is doing business in North Carolina through its wholly owned sales subsidiary. In any practical sense the subsidiary is the defendant's agent for the distribution of its manufactured products. In law the contractual relationship between them may be that of seller and buyer, and the separate corporate entity of the subsidiary may be observed, but a disregard of the vital fact of actual control of the subsidiary is likely to appear to the laymen an exaltation of legal fiction. Certainly such a holding permits a foreign corporation to manufacture and distribute goods through its own extensive organization and yet be immune to suit in states where such goods, if negligently manufactured, may cause injuries to persons and property. Such a result seems unjust. Barrow Steamship Co. v. Kane, 170 U.S. 100, 107, 18 S.Ct. 526, 42 L.Ed. 964; State Highway & Public Works Commission v. Diamond S. S. Transportation Corp., 225 N.C. 198, 203, 34 S.E.2d 78.

Defendant's contacts with the State of North Carolina, through its manufacture of tractors and agricultural machinery intended for widespread sale and use in this state, and its sale of such products to retail dealers in the state through its wholly owned subsidiary are such that, in my judgment, the maintenance of this suit in North Carolina would not "offend 'traditional notions of fair play and substantial justice' ". International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158. Such notions would appear to be more offended by a dismissal of the suit.

No decision of the Supreme Court of North Carolina involving the parent-subsidiary situation has been cited or found However, the approach of the North Carolina Court is exemplified by the following language in State Highway & Public Works Commission v. Diamond S. S. Transportation Corp., 225 N.C. 198 203, 34 S.E.2d 78, 81:

"Reference to the purpose of the statute may throw some light upon the propriety of its application in particular instances, as in this. Obviously, that purpose was, in recognition of reciprocal duties, to prevent a foreign corporation from accepting the protection of our laws in the transaction of its ordinary business, create obligations, and by reason of its remoteness from any forum available to a local citizen, secure immunity from liability. Within reasonable limits the statute should be liberally construed to accomplish its remedial purpose."

In Cape Fear Railroad v. Cobb, 190 N. C. 375, 377, 129 S.E. 828, 829, the Court stated: "He who acts as distributor for another, and not merely as a distributor of goods manufactured by the other, acts as his agent." This language was quoted with approval in Radio Station WM FR, Inc., v. Eitel-McCullough, 232 N.C. 287, 290, 59 S.E.2d 779.

In Harrison v. Corley, 226 N.C. 184, 37 S.E.2d 489, the Court cited and relied on International Shoe Co. v. State of Washington, supra. Defendant foreign corporation entered into a lease contract with Corley for the operation of four airports in North Carolina. The Court looked through the form of the contract to the substance, and concluded, 226 N.C. at page 188, 37 S.E.2d at page 492:

"Appellant was engaged in the business of operating in this State a chain of airports in furtherance of the general scheme or plan of its organization, a part and parcel of the activities for which it was created. Thus the appellant, over a period of time, enjoyed the privilege of having four airports maintained and operated in this State in its name as a part of the plan of operation which forms the basis of the objectives for which it was created. In so doing it enjoyed the benefits and protection of the laws of this commonwealth.

It thereby subjected itself to the jurisdiction of the courts of this State for the purpose of litigating liabilities created during its stay here."

In summary, the State court follows the lead of the United States Supreme Court in this field, and that Court's recent cases have shown a definite disposition to widen the concept of permissible state jurisdiction over foreign corporations.

█ Unquestionably, if the defendant by contract made an independent corporation, partnership or individual its distributor in North Carolina and retained a large measure of control over the distributor's activities and business, the distributor would be held defendant's agent. Kahn v. Maico Co., 4 Cir., 216 F.2d 233; Bach v. Friden Calculating Machine Co., Inc., 6 Cir., 167 F.2d 679; Parris v. H. G. Fischer & Co., 219 N.C. 292, 13 S.E. 2d 540; Harrison v. Corley, supra; Cape Fear Railroad v. Cobb, supra. No logical reason appears why the same result should not follow where an equal or greater measure of control is attained, not by contract, but by complete stock ownership of the distributing corporation.

█ Much of what has been written above might be taken as indicating this Court's notion of what the law might well be. For what the law actually is, however, I must consider the decision of the United States Supreme Court in Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. In that case, on facts almost identical with the facts in the instant case, it was held that the defendant corporation was not doing business in North Carolina so as to be present there and suable in the Federal Court. At page 336 of 267 U.S., at page 251 of 45 S.Ct., Justice Brandeis wrote: "The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whit-

ney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177–178, 43 S.Ct. 312, 67 L.Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409–411, 23 S.Ct. 728, 47 L.Ed. 1113; Peterson v. Chicago, Rock Island & Pacific Railway Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841, and People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction. There is here no attempt to hold the defendant liable for an act or omission of its subsidiary or to enforce as against the latter a liability of the defendant. Hence, cases concerning substantive rights, like Hart Steel Company v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148; Chicago, etc. Ry. Co. v. Minneapolis Civic Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; and United States v. Lehigh Valley R. R. Co., 254 U.S. 255, 41 S.Ct. 104, 65 L.Ed. 253, have no application."

The Cannon case has not been overruled and its principle has been cited by the Supreme Court in three later cases, Consolidated Textile Corp. v. Gregory, Judge, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 439 note, 69 S.Ct. 726, 735, 93 L.Ed. 779; United States v. Scophony Corp.,

333 U.S. 795, 813, 68 S.Ct. 855, 92 L.Ed. 1091. Other cases following Cannon are: Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., Inc., 9 Cir., 193 F.2d 158; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R. 2d 179; Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900 (opinion by Dobie, J.); McLean v. Goodyear Tire & Rubber Co., Inc., 5 Cir., 85 F.2d 150; Atlantic Greyhound Lines, Inc. v. Metz, 4 Cir., 70 F.2d 166, 168; Lane v. Maple Leaf Milling Co., D.C., 87 F.Supp., 741. See annotation in 18 A. L.R.2d 187. Nor has Congress yet provided "that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein".

The Cannon case, not being distinguishable so far as I can see, seems to settle the question and requires me to hold with the defendant.

Therefore, the motion of the defendant to dismiss for lack of jurisdiction and quash the return of service of summons is allowed and an order will enter.