Betty Lou MOORE and husband,
John L. Moore

v.

McKIBBON BROTHERS, INC.

No. Civ. 2:97–CV–24–WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

Dec. 1, 1998.

Frederick E. Link, Hartness & Link, Gainesville, GA, George K. Freeman, Jr., Roundtree & Seagle, Wilmington, NC, Benjamin N. Thompson, Lee M. Whitman, Wyrick Robbins Yates & Ponton, Raleigh, NC, for plaintiffs.

Albert Hunter Parnell, Thomas G. Tidwell, Hawkins & Parnell, Atlanta, GA, for defendant.

## ORDER

O'KELLEY, Senior District Judge.

This case is before the court for consideration of plaintiffs' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) [39–1]. After careful consideration, the court grants plaintiffs' motion for the reasons stated herein.

This case revolves around a slip and fall by Mrs. Betty Lou Moore on June 10, 1995. Mrs. Moore fell down a staircase of defendant McKibbon Brothers' motel in Gainesville, Georgia, suffering extensive injuries. Mrs. Moore and her husband John L. Moore reside in Harnett County, North Carolina, just outside of Erwin, North Carolina. McKibbon Brothers is a Georgia corporation with its principal place of business in Georgia. Plaintiffs filed the instant suit in the United States District Court for the Northern District of Georgia, Gainesville Division and now seeks to transfer venue to the Eastern District of North Carolina, Western Division. The court prematurely ruled on the motion before receiving plaintiffs' reply brief and has since vacated that opinion. *See* Order of October 23, 1998. At a hearing on November 2, 1998, the court heard argument on the motion to transfer venue.

Plaintiffs request that this action be transferred to the United States District Court for the Eastern District of North Carolina, Western Division pursuant to 28 U.S.C. § 1404(a). Section 1404(a) of Title 28 of the United States Code states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendant opposes transfer of venue because of lack of personal jurisdiction over defendant in North Carolina and the failure to demonstrate that transfer would be proper under the standards set out in § 1404(a).

 Without personal jurisdiction over the defendant, the transferee district is not a forum where the action "might have been brought," and transfer of venue is improper. *Hoffman v. Blaski,* 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *Sunbelt Corp. v. Noble, Denton & Associates, Inc.,* 5 F.3d 28, 33 (3d Cir. 1993). In considering whether a district court has personal jurisdiction over the defendant, the court undertakes a two part analysis. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). First, the court determines whether the state's long-arm statute provides a basis for personal jurisdiction. If so, the court must consider whether sufficient minimum contacts exist between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Id.*

 In diversity cases, "the federal court is bound by state law concerning the amenability of a person or a corporation to suit, so long as state law does not exceed

the limitation imposed by the Due Process Clause of the Fourteenth Amendment." *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1521 (11th Cir.1985). Because plaintiffs request transfer of venue to the Eastern District of North Carolina, North Carolina's long-arm statute controls whether personal jurisdiction exists over the defendant. The North Carolina courts echo the Eleventh Circuit's analysis of personal jurisdiction. First, North Carolina courts determine whether the long-arm statute, N.C.Gen.Stat. § 1–75.1 *et seq.* confers jurisdiction over the defendant. Second, the court must consider whether defendant's due process rights have been violated. *Tom Togs, Inc. v. Ben Elias Industries Corp.,* 318 N.C. 361, 348 S.E.2d 782, 785 (N.C.1986); *Starco, Inc. v. AMG Bonding & Insurance Services, Inc.,* 124 N.C.App. 332, 477 S.E.2d 211, 215 (1996); *Mony Credit Corp. v. Ultra–Funding Corp.,* 100 N.C.App. 646, 397 S.E.2d 757, 758 (1990).

Plaintiffs base jurisdiction on North Carolina General Statute 1–75.4(1)(d) which confers jurisdiction over a foreign corporation that "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." North Carolina courts have construed section 1–75.4(1)(d) to confer jurisdiction to the extent allowed by due process. *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629, 630 (1977); *see Vishay Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062, 1065 (4th Cir.1982); *General Latex & Chemical Corp. v. Phoenix Medical Technology, Inc.,* 765 F.Supp. 1246, 1248 (W.D.N.C.1991). Given this liberal construction, North Carolina courts presume the existence of in personam jurisdiction. *Barclays Leasing, Inc. v. National Business Systems, Inc.,* 750 F.Supp. 184, 187 n. 1 (W.D.N.C.1990). Accordingly, the court will consider the two prongs of the jurisdictional analysis concurrently and focus on whether the exercise of jurisdiction over the defendant will violate its due process rights.

First, the court considers whether the defendant has established sufficient "minimum contacts" with the forum state. *Sculptchair, Inc.,* 94 F.3d at 630. The minimum contacts analysis requires inquiry into whether (1) the defendant's contacts with the forum state is related to plaintiff's cause of action or gives rise to it; (2) defendant purposefully availed itself of the privilege of conducting activities within the forum; and (3) defendant's contacts with the forum state are such that it should reasonably be expected to be haled into court there. *Id.* at 631. Second, the court decides whether conferring jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* at 630–31. Relevant factors include the burden of the defendant, the interests of the forum, and the plaintiffs' interest in obtaining relief. *Id.* at 631.

It is undisputed that this cause of action is not related to defendant's contacts with North Carolina. However, that is not the end of the jurisdictional inquiry. Rather, the court then considers whether defendant has "continuous and systematic" business contacts with the forum state on which to base general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In *Helicopteros,* the Court held that purchases at regular intervals and the dispatching of personnel into the forum state for training related to the purchases did not constitute continuous and systematic contacts with the forum state. The defendant corporation did not have a place of business in the forum state and had not been licensed to do business in the state.

In the case sub judice, plaintiffs point to four contacts that defendant has with North Carolina on which general jurisdiction may be based: (1) business entities that are closely related to defendant transact business in North Carolina; (2) defendant owns two parcels of land in North Carolina; (3) defendant leases one of these parcels; and (4) defendant has a regis-

tered agent for service of process in North Carolina pursuant to N.C.Gen.Stat. § 55–5–04.

Defendant McKibbon Brothers, Inc. is a Georgia corporation with its principal place of business in Georgia.[1] Defendant owns two parcels of land in North Carolina. An unoccupied house sits on one of the properties. The other parcel is the site of a hotel, which the defendant does not own or operate.[2] Instead, McKibbon Hotel Group of Asheville, North Carolina, L.P. ("L.P."), a Georgia limited partnership, owns and operates the hotel. McKibbon Hotel Group, Inc. ("Hotel Group"), a Georgia corporation, is the L.P.'s general partner and is an entity formed by Mr. John McKibbon. The L.P. also has six to eight limited partners, including Steve McKibbon. John and Steve McKibbon own less than five percent of defendant McKibbon Brothers Inc.

Although defendant does not directly own any interest in either the Hotel Group or the L.P., the three entities have other ties besides some common owners. First, despite its assertions of lack of ownership or control of the hotel, defendant received the tax bill for the two parcels of land, which valued the land and the assets at over $4 million. Second, the entities share common officers. John and Steve McKibbon, Mr. David Hughs, and Mr. Vann Herring are officers in both defendant and the Hotel Group. Mr. Hughs is an officer in all three entities. Third, the entities share common Georgia addresses and the entities use identical registered agents in North Carolina.

After careful consideration, the court finds that defendant's contacts with North Carolina satisfy the minimum contacts analysis. The court readily admits that whether North Carolina has jurisdiction over the defendant is a close question. However, in considering the cumulative impact of the defendant's contacts with the forum, the court finds that North Carolina courts can exercise jurisdiction over defendant without offending due process. *See Harrison v. Corley,* 226 N.C. 184, 37 S.E.2d 489 (1946) (basing jurisdiction on combination of facts and circumstances); *Fraser v. Littlejohn,* 96 N.C.App. 377, 386 S.E.2d 230 (1989) (considering cumulative impact of defendant's contacts).

The court first notes that defendant's individual contacts may not be sufficient to confer jurisdiction if considered in isolation. "It is clear that mere ownership of property in the forum state is insufficient to establish 'minimum contacts' necessary to satisfy the requirement of due process." *Fraser,* 386 S.E.2d at 236. In addition, circuit courts that have considered the issue have rejected the notion that appointing a registered agent in and of itself satisfies the minimum contacts requirement. *Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.,* 642 F.2d 802, 805 (5th Cir.1981);[3] *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992); *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir. 1971).

In the instant case, however, defendant has engaged in more than mere ownership

---

**1.** The court's recitation of the facts is based on counsels' representations at the November 2, 1998 hearing and on the record before this court. The court notes that this evidence was not before the court when it originally ruled on the motion to transfer. Unfortunately, at that time, the court relied on conclusory statements offered by Mr. David Hughs by affidavit to the effect that defendant did not continuously and systematically conduct business in North Carolina. Hughs Aff. ¶ 4. Because of the highly general nature of the affidavit, the court was misled into believing that defendant had no other contact in North Carolina except for its registered agent. It was on this mis-

conception that the court based its order denying plaintiffs' motion to transfer venue, which order has since been withdrawn.

**2.** The L.P. first owned the land and the hotel but then transferred the land by warranty deed to defendant. Deed of February 29, 1996. Defendant then leased the land back to the L.P.

**3.** The Eleventh Circuit has adopted as precedent all Fifth Circuit cases decided before September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

of property and appointment of a registered agent. In conjunction with the appointment of a registered agent, defendant has obtained a certificate of authority in order to transact business in North Carolina pursuant to N.C.Gen.Stat. § 55–15–01. Pl.Ex. 1. At the hearing on November 2, 1998, counsel for the defendant could not explain why defendant obtained a certificate of authority and appointed a registered agent in North Carolina. Although the question of whether defendant is transacting business in North Carolina is distinguishable from the jurisdictional analysis, the court finds that an examination of North Carolina law on this question sheds light on whether defendant purposefully availed himself of the opportunity to conduct business in North Carolina such that it could reasonably be expected to be haled in a North Carolina court.

A review of North Carolina's Business Corporation Act and the pertinent cases suggest that leasing real property in North Carolina may be deemed transacting business within the meaning of the statute. Section 55–15–01 excludes a list of actions from the term "transacting business" including the "owning, *without more*, [of] real or personal property." § 55–15–01(a)(11) (emphasis added). In determining whether a foreign corporation is transacting business in North Carolina, "some substantial part of a party's ordinary business, which must be continuous in the sense that it is distinguished from merely casual or occasional transactions, and must be of such a character as will give rise to some form of legal obligations." *Abney Mills v. Tri–State Motor Transit Co.,* 265 N.C. 61, 143 S.E.2d 235, 242 (1965) (quoting Ballentine's Law Dictionary 2d ed.).

The court finds that defendant is transacting business in North Carolina within the meaning of § 55–15–01. Defendant's lease of the property on which the hotel stands is a continuing transaction conducted as an ordinary course of defendant's business, which gives rise to contractual duties on the part of the defendant toward the L.P. In *Corley,* the North Carolina Supreme Court held that North Carolina had jurisdiction over a foreign corporation that leased airplanes to one of its employees for use at several North Carolina airports leased by the employee. 37 S.E.2d at 492. Under the terms of the lease, the employee's activities were controlled by the company and the employee was required to operate the airports in the company's name.

In the case sub judice, evidence of the extent of control that defendant exercises over its property in North Carolina has not been submitted, but the court assumes that, as in all leasing arrangements, the defendant retained some control over the North Carolina property. Accordingly, the court finds that leasing valuable real estate in North Carolina in conjunction with obtaining a certificate of authority to transact business in North Carolina and appointing a registered agent supports the fact that defendant continuously and systematically conducts business in North Carolina.

Defendant relies on *Eways,* 265 S.E.2d at 637, for the proposition that jurisdiction cannot constitutionally be based on the ownership of substantial real estate holdings. In *Eways,* the court held that North Carolina did not have jurisdiction over an out of state defendant who had substantial real estate holdings in North Carolina, had executed several deeds to transfer the property, and had brought an unrelated action in a North Carolina court to rescind the contract of sale. *Id.* at 640–41. The court found that defendant was not engaged in the regular business of the development and selling of property in the state. *Id.* at 641. The instant case is distinguishable. Defendant did not merely purchase the property in North Carolina and then attempt to dispose of it at a later date; instead, defendant is engaging in an ongoing leasing arrangement of real property in North Carolina.

■ Moreover, the court finds that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Sculptchair,* 94 F.3d at

630–31. As will be discussed *infra*, plaintiffs, as residents of North Carolina, have an interest in obtaining relief in North Carolina because of Mrs. Moore's health status and her inability to travel. In addition, North Carolina has an interest in seeing that its residents are compensated for injuries inflicted upon them. Finally, although it may be more burdensome for defendant to litigate in North Carolina, defendant has chosen to be authorized to transact business in the state and has actually conducted business in the state.

Accordingly, the court finds that North Carolina courts may constitutionally exercise jurisdiction over defendant such that North Carolina is a venue where the action might have been brought.[4] The court must now consider whether transfer of venue is proper under § 1404(a).

■ In considering a motion to transfer venue pursuant to § 1404(a), the burden is on the moving party to establish the propriety of the transfer. *See In re Ricoh Corp.*, 870 F.2d 570 (11th Cir.1989); *Martin v. South Carolina Bank*, 811 F.Supp. 679 (M.D.Ga.1992). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (1996); *In re Ricoh Corp.*, 870 F.2d at 572. Section 1404 requires the court to consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. *Bell v. K–Mart Corp.*, 848 F.Supp. 996, 998 (N.D.Ga.1994). Transfer should be denied if it would merely shift inconvenience from one party to another. *Id.*

■ Because of the weight accorded to plaintiff's choice of forum, the court will consider the fact that plaintiffs are requesting the transfer as one factor in favor of allowing a change in venue. The court notes that in almost all cases, it is the defendant who moves to transfer venue. However, the fact that in the case sub judice plaintiffs are the movants does not abrogate the general rule when at the time of the filing of the complaint, plaintiffs did not know that they had a choice of forums. It was only in the course of discovery that plaintiffs found out that defendant had the sufficient minimum contacts with North Carolina to justify the conferring of personal jurisdiction and venue in North Carolina.

■ Regarding the convenience of the parties, the court finds that the Northern District of Georgia and the Eastern District of North Carolina are of equal convenience to the parties. Defendant is a Georgia corporation with its principle place of business in Gainesville, Georgia. Plaintiffs are residents of North Carolina. No matter where the trial is set, either party will have to travel.

With respect to the convenience of the witnesses, the court also rules that the equities are split. Although defendant asserts that the liability witnesses, except for Mr. Moore, are present in Georgia, plaintiffs have shown that at least one other liability witness, Mrs. Frankie Peale, the first person on the scene after Mrs. Moore's fall, resides in Florida. In addition, plaintiffs have demonstrated that most of the damages witnesses are in North Carolina.

■ Finally, as for the interests of justice, the court looks at the same factors

---

4. The court notes that jurisdiction may also be premised on the business conducted by the L.P. and the Hotel Group in North Carolina. *See Federal Deposit Insurance Corp. v. British–American Corp.*, 726 F.Supp. 622 (E.D.N.C. 1989) (finding jurisdiction over parent corporation who used wholly owned subsidiary to do business in North Carolina); *J.M. Thompson Co. v. Doral Manufacturing Co., Inc.*, 72 N.C.App. 419, 324 S.E.2d 909 (1985) (applying alter ego doctrine to jurisdictional analysis); *Rose's Stores, Inc. v. Padgett*, 62 N.C.App. 404, 303 S.E.2d 344 (1983) (holding that because individual defendant acted as the alter ego of the corporate defendant, jurisdiction was proper). However, because the court has found jurisdiction exists based on defendant's other contacts with North Carolina, the court declines to issue a definitive ruling on the issue.

that have been traditionally used in applying the doctrine of forum non conveniens. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Although the court may exercise much discretion in this area, the Supreme Court has outlined several criteria to consider including access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839. Plaintiffs assert that due to Mrs. Moore's failing health, she cannot travel to Gainesville, Georgia. Defendant disputes that traveling to and from Gainesville, Georgia one time for the trial will tax Mrs. Moore's health more than attending a trial in North Carolina. Defendant also argues that a jury view of the site of Mrs. Moore's fall may be required, and a local action should be decided by a local forum.

The court rules that plaintiffs have demonstrated that the trip to Gainesville, Georgia as well as a prolonged stay in unfamiliar surroundings would be detrimental to Mrs. Moore's health. Dr. Mann Aff. ¶ 13; Dr. Mann Dep. 107–09. Plaintiffs have presented evidence that Mrs. Moore is blind, suffers from brain trauma, is chronically fatigued, and has mobility problems. Dr. Mann Aff. ¶¶ 11, 13. Although defendant suggests that Mrs. Moore would be spending about the same amount of time in a car if she were to commute to Raleigh, North Carolina every day for her trial instead of traveling to Gainesville, Georgia one time, defendant does not address the adverse effect on Mrs. Moore's health due to staying in unfamiliar surroundings. If the trial is held in Raleigh, North Carolina, Mrs. Moore could return each night to her own home where as a blind person she is more comfortable. Dr. Mann Aff. ¶ 16. In addition, if the trial were held in North Carolina, Mrs. Moore would have access to her health care providers. Dr. Mann Aff. ¶ 18.

▮ Although the court agrees that a jury view of the premises, if appropriate, is a factor mitigating against transfer, *see Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839, the court finds that a jury view of the staircase where Mrs. Moore fell is not necessary if the jury can view photographs of the scene.[5] Even if plaintiffs rely on expert testimony on optical illusions and dark adaptation, staircases are not so unusual as to warrant a jury view of the premises. *See Busch v. Sea World of Ohio,* 95 F.R.D. 336 (W.D.Pa.1982) (holding that jury view of amusement park was not necessary).

Moreover, although Georgia law controls, defendant mischaracterizes this case as a purely local controversy. The accident may have occurred in Georgia, but plaintiffs are residents of North Carolina. Unlike cases where plaintiff has little or no contact with the forum state, *see e.g., Bell,* 848 F.Supp. at 1000, Mr. and Mrs. Moore are residents of North Carolina. North Carolina has an interest in seeing that their residents are compensated for injuries inflicted upon them. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

▮ Finally, defendant argues that the motion to transfer venue is untimely because it was not filed within thirty days of the joint scheduling order. However, the court finds that plaintiffs had an adequate reason for not filing the motion to transfer until this time. That is, Dr. Mann determined after an office visit on August 4, 1998 that Mrs. Moore's health had deteriorated to the point where travel to Gainesville, Georgia for a trial would be detrimental to her. Dr. Mann Aff. ¶ 11.

Accordingly, the court GRANTS plaintiffs' motion to transfer venue pursuant to

---

5. Plaintiffs assert that photographs of the scene taken immediately after the accident are available but have not been produced by the defendant. Pls. Reply Br. 7.

28 U.S.C. § 1404(a) [39–1]. This action is hereby transferred to the Eastern District of North Carolina, Western Division. The court declines to rule on other pending motions, specifically, defendant's motion to compel [42–1] and motion for an independent medical examination [46–1], finding that it is more appropriate for the trial judge in the transferee district to do so.

IT IS SO ORDERED.