ROSE'S STORES, INC. v. CHARLES E. PADGETT, GENERAL MUSIC CORPORATION, AND FUTURES MANAGEMENT, LTD.

No. 829SC515

(Filed 7 June 1983)

**Constitutional Law § 24.7; Process § 14.3— individual defendant—foreign corporation—personal jurisdiction—suffficient minimum contacts**

In an action to recover for breach of fiduciary duty by the individual defendant in accepting kickbacks through defendant Virginia corporation for records and tapes bought for plaintiff while an employee of plaintiff, the courts

of this State could assert personal jurisdiction over the individual defendant since he was a resident of North Carolina during the period of the alleged illegal kickbacks; furthermore, defendant Virginia corporation had sufficient minimum contacts with North Carolina to permit courts of this State to assert personal jurisdiction over it where the individual defendant had a number of financial and supervisory contacts with the corporation and functioned as the alter ego of the corporation while he was a resident of North Carolina, and where agents of the corporation made buying trips to North Carolina and on at least two occasions made purchases of musical recordings in this State totalling several thousand dollars. G.S. 1-75.4; G.S. 55-145.

APPEAL by defendant, Futures Management, Ltd., from *Hobgood, (Robert), Judge.* Order entered 8 January 1982 in Superior Court, VANCE County. Heard in the Court of Appeals 11 April 1983.

This is a civil action wherein the plaintiff makes the following relevant allegations in its complaint:

. . .

3. That, at all times hereinafter complained of, Charles E. Padgett was employed by Rose's Stores, Inc., was Vice President of said corporation, and in such capacity acted as general merchandise manager of the corporation supervising the purchase of merchandise.

4. That, at all times hereinafter complained of, Charles E. Padgett owned all or substantially all of the stock of Futures Management, Ltd. and/or that he was doing business as Futures Management, Ltd.

5. That at all times hereinafter referred to, the defendant General Music Corporation operated as a manufacturer and/or wholesale distributor of musical recordings and tapes which it sold and distributed to retail merchandising businesses. That on or about August 25, 1978 the defendant General Music Corporation executed and delivered a check in the amount of $18,897.36 payable to Futures Management, Ltd. which said check was executed and delivered as a gift gratuity or commission for the benefit of Charles E. Padgett for the purpose of influencing his action in relation to the business of Rose's Stores, Inc. and particularly to induce said Charles E. Padgett to purchase merchandise manufactured or distributed by the defendant General Music Corporation.

That said payment was made in violation of G.S. § 14-353 and as an unfair or deceptive practice or act in the conduct of a trade or business in violation of G.S. § 75-1.1 et seq.

6. That the defendant Charles E. Padgett requested or accepted said gift or gratuity in the amount of $18,897.36 while an agent, servant and employee of Rose's Stores, Inc. under an agreement with General Music Corporation or with an understanding that he would act in a particular manner in relation to Rose's Stores, Inc. business and more particularly that he would purchase merchandise distributed or manufactured by General Music Corporation. That, being authorized to procure materials, supplies or other articles either by purchase or contract for Rose's Stores, Inc., Charles E. Padgett received, directly or indirectly, for himself or for another, said sum of money as a commission, discount or bonus from General Music Corporation. That the same was in violation of G.S. § 14-353 and constituted an unfair and deceptive trade practice or act as prohibited by G.S. § 75-1.1. That the action of the defendant General Music Corporation in paying said sum to the defendant Charles E. Padgett and the action of the defendant Charles E. Padgett in accepting said sum was willful, malicious and fraudulent.

. . .

8. That Futures Management, Ltd., as alleged herein, is a Virginia corporation owned by the defendant Charles E. Padgett at the time of the matters herein complained of. That said Futures Management, Ltd. was used as a vehicle by said Charles E. Padgett for the purpose of concealing the sum received by him pursuant to the agreement set forth herein. That on information and belief plaintiff alleges that Futures Management, Ltd. received all or part of the funds herein specified.

The defendant, Futures, moved to dismiss the complaint against it for lack of personal jurisdiction under N.C. Gen. Stat. § 1A-1, Rule 12(b). In support of its motion to dismiss, the defendant, Futures, filed affidavits, answers to interrogatories and depositions which tended to show that Futures is a Virginia corporation engaged in maintaining retail outlets which sell material, notions, domestic goods and ready-to-wear items and that it has

maintained outlets in Virginia, Kentucky and Tennessee, but it has never operated a store in North Carolina.

After a hearing on the motion, the trial judge made the following findings of fact:

1. On January 14, 1974 the defendant Charles E. Padgett was promoted to Sales Manager of Rose's Stores, Inc., the plaintiff, and moved to Henderson, North Carolina (the home office of Rose's Stores, Inc.) during the month of March 1974. As Sales Manager Charles E. Padgett was responsible for all company sales which included advertising promotions, special selling events and in connection with such special selling events he was in charge of buying the merchandise. As Sales Manager he reported directly to the President of Rose's Stores, Inc., L. H. Harvin, Jr. On May 22, 1975 Charles E. Padgett was promoted to Vice President of Sales and Merchandising. As Vice President of Sales and Merchandising, Charles E. Padgett was responsible for all functions which he had as Sales Manager, and in addition was placed in charge of all buying functions and had supervision of all buyers. As Vice President of Sales and Merchandising, he reported directly to the President of the Company, L. H. Harvin, Jr. Charles E. Padgett's employment with Rose's Stores, Inc. was terminated on February 27, 1979. From the date on which Charles E. Padgett moved to Henderson in March 1974 until his employment was terminated on February 27, 1979, Charles E. Padgett was a resident of Henderson, North Carolina, and resided at 1256 David Avenue, Henderson, North Carolina, and was at all times employed by Rose's Stores, Inc. in the capacities set forth above.

2. On February 11, 1980, Charles E. Padgett and Betty Myers became stockholders of Futures Management, Ltd. and on February 16, 1981, Dan Hardee of Mt. Sterling, Kentucky, became a stockholder.

3. Charles E. Twisdale was the bookkeeper for Futures Management, Ltd. from the date of its incorporation to the present and is currently also serving as Secretary-Treasurer of the corporation. Futures Management, Ltd., a Virginia corporation, was organized by Vincent J. Mastracco, an attorney in Norfolk, Virginia. At the time of the organization of said

corporation, Vincent J. Mastracco was the sole stockholder as nominee for persons not named in the Charter. The stock of said corporation was later placed in the names of Charles Padgett and Betty Myers and later in February or March 1981 was placed in the names of Padgett, Myers and Hardee. During the period of time that the activities alleged in the complaint and amended complaint were taking place, the sole stockholders of Futures Management, Ltd. were in fact Charles E. Padgett and Betty Myers, both of whom resided in Henderson, North Carolina, and both of whom were employed by Rose's Stores, Inc.

From Henderson, North Carolina, using the mail, telephone and bank wire service, provided within this state they directed and supervised the operation, management and financing of Futures Management, Ltd. Padgett repeatedly called Twisdale from Henderson, North Carolina, mostly in the evening, and they discussed "what we were going to do with the business", as well as finances and merchandise to be purchased for the stores.

On a regular basis Twisdale received funds from Padgett and Myers for the Futures Management, Ltd. account, often sent in the mail from Padgett's house in Henderson, North Carolina. Twisdale recalls that the amount of $18,897.36 (which is the exact amount of the defendant General Music check to Futures Management, Ltd. dated August 25, 1978) was posted as one of the first amounts in the Futures Management [account].

Charles Padgett obtained a check on August 25, 1978 in Charlotte, North Carolina from General Music Corporation, gave the check back to General Music and asked them to reissue the check in the amount of $18,897.36 in the name of Futures Management, Ltd. and ultimately, that check was used to acquire a bank check from a bank in Charlotte, North Carolina. Charles Padgett brought that check back across the State of North Carolina and caused it to be deposited in the Futures Management, Ltd. account on August 29, 1978.

. . .

Futures also at least twice purchased records from defendant General Music in Charlotte, North Carolina for

several thousand dollars. On page 78 of his deposition Twisdale indicates that a Futures' employee, Wayne Eastridge, went on several buying trips to North Carolina to buy merchandise and store fixtures.

Although Futures was operating as a retailer in Virginia, the overall supervision and direction of the corporation, especially the financial direction, came from Padgett and Myers in Henderson, North Carolina. Twisdale testified that all the funds in the Futures' investment account, which appears to be its only capital asset other than fixtures and inventory, were received either by mail from Padgett in North Carolina or from Myers, or from funds wired directly to Futures' bank account from North Carolina. In Twisdale's words, "On many occasions Miss Myers would call up (from Henderson, North Carolina) and say Mr. Padgett's going to wire money into the account and give me the amount."

Twisdale testified that all sets of the tax returns for Futures were sent directly to Padgett in Henderson, North Carolina from the accounting firm of Peat, Marwick & Mitchell. When it was necessary for Futures to borrow money, Padgett pledged his personal certificate of deposit for a $35,000.00 loan to Futures, and also signed the Note for Futures.

. . .

From an order denying the defendant Futures' motion to dismiss, Futures appealed.

*Ward and Smith, by David L. Ward, Jr., and Perry, Kittrell, Blackburn & Blackburn, by Charles F. Blackburn for the plaintiff, appellee.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Eugene W. Purdom for the defendant, appellant.*

HEDRICK, Judge.

The defendant first argues the findings of fact are not supported by the evidence in the record. Futures contends that the trial judge erred in finding Padgett and Myers to be the sole shareholders during the period of activity complained of in the

plaintiff's complaint on grounds that the record shows they did not become shareholders until 11 February 1980, almost a year after Padgett's employment was terminated with Rose's. Futures argues that the findings pertaining to Padgett's "supervision" of Futures and his "business conversations" with Twisdale were erroneous because Twisdale's testimony was "not specific as to times or places" and because Twisdale had talked to Padgett only "eight or ten times since June 6, 1978." Futures further contends that the trial court's finding that Padgett brought an $18,897.36 check across North Carolina and deposited it in the Futures management account is "pure speculation." Finally, the defendant asserts there are not sufficient "minimum contacts" with North Carolina to establish personal jurisdiction.

The question of personal jurisdiction is controlled by a two-part determination: (1) a statutory basis must exist for finding personal jurisdiction and (2) the exercise of personal jurisdiction must meet the requirements of constitutional due process. *Dillon v. Funding Corp.*, 291 N.C. 674, 675, 231 S.E. 2d 629, 630 (1977). *See* Annot., 20 A.L.R. 3d 1201 (1968). In this case, N.C. Gen. Stat. § 1-75.4 and § 55-145 set forth the applicable statutory requisites. The "minimum contacts" standard of *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) controls the due process prong of the two-part test. The United States Supreme Court refined this standard in *Hanson v. Denckla,* 357 U.S. 235, 253 (1958):

> The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*See also Farmer v. Ferris,* 260 N.C. 619, 133 S.E. 2d 492 (1963); *Chadbourn, Inc. v. Katz,* 285 N.C. 700, 208 S.E. 2d 676 (1974); and *Buying Group, Inc. v. Coleman,* 296 N.C. 510, 251 S.E. 2d 610 (1979). "Since the requisite statutory authorization for personal jurisdiction is coextensive with federal due process, the critical inquiry in determining whether North Carolina may assert *in personam* jurisdiction over a defendant is whether the assertion thereof comports with due process." *Kaplan School Supply v. Henry Wurst, Inc.,* 56 N.C. App. 567, 570, 289 S.E. 2d 607, 609 (1982) (citations omitted).

The basis of plaintiff's claim against the defendant, Futures, is found in the critical allegations in the complaint that the defendant, Padgett, breached his fiduciary relationship as an employee of Rose's by using the defendant, Futures, as a vehicle to conceal the allegedly illegal commissions from General Music Corporation. The substance of plaintiff's claim against Futures is that Padgett was at all times Futures' alter ego, and that as such Futures was carrying on "substantial activity" in this state within the meaning of N.C. Gen. Stat. § 1-75.4(1)(d). The evidence, adduced at the hearing on the defendant's motion, tends to show that Futures stock was in the name of Vincent J. Mastracco, Jr. as nominee during the time that Padgett was allegedly receiving the "unlawful kickbacks" from General Music Corporation and that he and Myers eventually took the stock after he severed his relationship with the plaintiff. The evidence, therefore, does not support the court's finding that Padgett and Myers were the sole stockholders during the activities alleged in the complaint, but it is sufficient to raise the inference that Padgett and Myers were in control of the corporation, although officially they were not stockholders. The finding of fact that Padgett and Myers "directed and supervised the operation, management and financing of Futures Management, Ltd." is supported by Twisdale's testimony that he and Padgett discussed finances, merchandise and "what they were going to do with the business." The finding is further substantiated by Twisdale's statement that Myers often called to give him the amount of money Padgett was wiring to his Futures Investment account. Although Futures challenges the finding of fact that "Padgett repeatedly called Twisdale" by arguing that "eight to ten" phone calls does not constitute repeated contacts, we feel the trial judge's basic finding of fact as to Padgett's participation in Futures' corporate business is supported by the evidence.

Also, we think there is sufficient evidence to raise a reasonable inference that Padgett deposited in Futures' account a check he had obtained from General Music Corporation for allegedly illegal commissions. There is no conclusive evidence that Padgett carried the same check across North Carolina and deposited it in the Futures account, but there was evidence presented at the hearing from General Music Corporation that Padgett did receive a check for $18,897.36 and Twisdale's deposition reveals that a

deposit for precisely $18,897.36 was credited to Padgett's investment account with Futures. Even though all of the court's findings do not match up with evidence presented, every critical part of the findings of fact is substantiated by the evidence. Therefore, defendant's argument that the trial judge's findings of fact are not supported by the record is overruled.

We are also unconvinced by the contention that Futures did not have the requisite "minimum contacts" with North Carolina to establish jurisdiction. The judge's findings indicate Padgett had a number of financial and supervisory contacts with Futures. Thus, Padgett functioned as the alter ego of Futures while he was a resident of North Carolina. Since Padgett was a North Carolina resident during the period of the illegal activities alleged, he is clearly subject to personal jurisdiction in North Carolina, and since he acted as the alter ego of Futures, Futures is likewise subject to the jurisdiction of North Carolina courts. In addition, the evidence tends to show that agents of Futures made buying trips to North Carolina and on at least two occasions made purchases of musical recordings from General Music Corporation totalling several thousands of dollars.

The order denying the defendant's motion to dismiss is

Affirmed.

Chief Judge VAUGHN and Judge ARNOLD concur.