HOME–STAKE PRODUCTION
COMPANY, Plaintiff–Appellee,

v.

TALON PETROLEUM, C.A., a Venezuelan corporation; Hidrocarburos Y Derivados, C.A., a Venezuelan corporation; Hideca Oil International, a Cayman Island corporation; Multi–Development Corporation, a Florida corporation, Defendant

and

Hideca U.S.A., Inc., a Delaware corporation; Romichan Corporation, a Delaware corporation; Raul J. Valdes–Fauli, Trustee, L.W., Inc., a Delaware corporation; Laudmar, Inc., a Delaware corporation; Lunelco, Inc., a Delaware corporation; Venrest Investment Corporation, a Netherlands Antilles corporation; Karenwood International, N.V., a Netherlands Antilles corporation; Rafael Tudela, Defendants–Appellants.

No. 88–2451.

United States Court of Appeals,
Tenth Circuit.

July 9, 1990.

W. Neil Eggleston (John W. Nields, Jr., also of Howrey & Simon, Washington, D.C., and Douglas L. Inhofe of Conner & Winters, Tulsa, Okl., with him on the brief), for defendant-appellant Rafael Tudela.

J. Jayne Jarnigan (Gregory L. Mahaffey of Mahaffey & Gore, Oklahoma City, Okl., with her on the brief), for defendants-appellants L.W., Inc., Laudmar, Inc., Lunelco, Inc., Hideca U.S.A., Inc., Romichan Corp., Karenwood International, N.V., Venrest Inv. Corp., N.V., and Raul J. Valdes–Fauli, Trustee.

J. Douglas Mann (A.F. Ringold and Mark S. Rains of Rosenstein, Fist & Ringold, Tulsa, Oklahoma, and Elihu Inselbuch of Caplin & Drysdale, New York City, with him on the brief), for plaintiff-appellee.

Before LOGAN, HENLEY,* and ANDERSON, Circuit Judges.

---

* The Honorable J. Smith Henley, Senior United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

LOGAN, Circuit Judge.

The appeal in this diversity action arises out of an effort to hold liable for the debt of three defunct corporations the individual who allegedly was their alter ego and other corporations allegedly bearing the same alter ego relationship to the individual defendant. This appeal challenges the district court's entry of a preliminary injunction restraining the transfer of real property owned by some of the latter corporations in the United States. The appellants urge this court to dissolve the preliminary injunction and dismiss the action for lack of personal jurisdiction. We dissolve the injunction and dismiss the action with respect to all appellants except Rafael Tudela.

## I  Facts

In the early 1970s, Home–Stake Production Company (Home–Stake) was engaged in two programs to develop and operate oil properties in Venezuela. Under Venezuelan law, title to oil rights or "concessions" had to be held by Venezuelan companies. Accordingly, Home–Stake acquired a controlling interest in Talon Petroleum, C.A., a Venezuelan corporation. Home–Stake organized two corporations to exploit the concessions owned by Talon, the 1970 Program Operating Corporation and the 1971 Program Operating Corporation. Home–Stake sold various units of participation in the 1970 and 1971 programs to third-party investors (Participants). The two program operating companies entered into a joint venture with Talon to operate and develop the latter's Venezuelan oil properties. Home–Stake owned eighty-nine percent of Talon's stock.

In 1973, Home–Stake instituted reorganization proceedings in the Bankruptcy Court for the Northern District of Oklahoma. In February 1974, the Bankruptcy Court approved the sale of Home–Stake's Venezuelan assets, including its stock in Talon, to a Venezuelan company, Hidrocarburos y Derivados, C.A. (Hideca). Hideca's performance under the terms of the sale contract was guaranteed by a Cayman Islands corporation, Hideca Oil International (Hideca Oil). Both companies were represented by Rafael Tudela at hearings before the Bankruptcy Court before its approval of the sale. Tudela represented that he was the chief executive officer and the major shareholder of Hideca and Hideca Oil.

A Supplemental Order setting forth the terms of the sale was executed in June 1974. Under this order, Talon assumed operating responsibility for the 1970 and 1971 programs, and became obligated to pay the Home–Stake Trustee (the Trustee) on behalf of the Participants in those programs a portion of the proceeds of the sale of oil occurring after February 16, 1974, from properties in the programs. Talon also became obligated to pay the Trustee for the Participants' benefit a portion of any indemnification award paid to Talon from the Venezuelan government in the event of nationalization of the oil industry. By agreement of the parties, any action against Talon, Hideca or Hideca Oil for failure to comply with the Supplemental Order could be brought in federal court in the Northern District of Oklahoma.

The Venezuelan petroleum industry was nationalized in August 1975, effective December 31 of that year. The Venezuelan government paid Talon a nationalization award of approximately $4.7 million. No portion of this award reached the Trustee, however, who in 1977, acting on the Participants' behalf, applied to the bankruptcy court for an order directing Talon to account for the nationalization award and for its operation of the Venezuelan properties. The Trustee also sought an order finding Rafael Tudela and Talon's president, Nicholas Becks, in contempt for failing to comply with the Supplemental Order. The bankruptcy court entered judgment against Talon in favor of the Participants for $1,690,113.55. The judgment was later amended to hold Hideca and Hideca Oil jointly liable in the same amount. This judgment was affirmed by the district court and, ultimately, by this court. *Talon Petroleum, C.A. v. Home–Stake Prod'n Co.*, No. 84–1117 (10th Cir. May 15, 1986).

The Trustee filed the instant action on December 18, 1986, to collect the judgment. He named as defendants the three judg-

ment debtor corporations; Rafael Tudela and his brother Alberto Tudela; Hideca U.S.A., Inc., Romichan Corporation, L.W., Inc., Laudmar, Inc. and Lunelco, Inc., all Delaware corporations; Multi–Development Corporation, a Florida corporation; Raul J. Valdes–Fauli, an individual, as Trustee for Multi–Development and Romichan; and Venrest Investment Corporation, N.V., and Karenwood International, N.V., both Netherlands Antilles corporations.[1]

The Trustee alleged that the judgment debtor corporations "no longer exist, or if they exist, they are dormant corporations with no assets." I R. tab 1 at ¶ 4. He sought a declaration that all of the defendant corporations, including the judgment debtors, were instrumentalities of the Tudelas, and that the corporate entity of each of these defendants should be disregarded because the corporations are simply alter egos of the Tudelas created to defraud legitimate creditors such as Home–Stake.

The Trustee further alleged that certain of the defendants, specifically Hideca U.S.A., Valdes–Fauli, Multi–Development, Romichan, L.W., Laudmar, Lunelco, and Alberto Tudela, own real property within the United States. Additionally, he charged that Banque Worms, S.A., a French banking corporation, has in its possession approximately $10,000,000 which Karenwood is claiming in pending litigation in the Southern District of New York. The complaint prayed for a temporary restraining order and a preliminary injunction restraining transfer of any of this property without court approval and deposit of all proceeds of any court-approved transfer with the clerk of the court. The injunction was necessary, the Trustee urged, to prevent the defendants from selling the property and transferring the proceeds beyond the court's jurisdiction, thereby "effectively depriv[ing] Home–Stake of the ability to collect any judgment which this court may ultimately render against the defendants." I R. tab 1 at ¶ 12. The temporary restraining order was entered that day and a hear-

ing on the request for a preliminary injunction was set for December 29, 1986. The Trustee was required to serve all defendants with notice of this hearing in any manner authorized by law. For reasons not here relevant, the hearing was rescheduled for January 23, 1987.

At the preliminary injunction hearing, L.W., Laudmar, Lunelco, Hideca U.S.A., Romichan, Karenwood, and Venrest (hereinafter collectively referred to as the "corporate defendants"), as well as Valdes–Fauli, were represented by counsel. The remaining defendants did not appear. The plaintiff's chief witness, Alvaro Sardi, upon whose affidavit and testimony the district court had relied in part in entering the temporary restraining order, did not appear. His affidavit and prior testimony, however, were admitted by stipulation of the parties for purposes of the preliminary injunction hearing only. Based on this and other evidence presented by both sides at the hearing, the court granted the preliminary injunction on January 30, 1987. It filed findings of fact and conclusions of law on February 19, 1987.

On February 10, Rafael and Alberto Tudela made their first appearances in the case. Ultimately, all of the defendants submitted motions to dismiss for lack of personal jurisdiction, as well as motions to the court to reconsider its findings of fact and conclusions of law and to vacate the preliminary injunction. These latter motions were supported by a declaration signed by Sardi which essentially contradicted all of the material statements made in the affidavit and testimony he had earlier offered. These earlier statements had been considered and in part relied upon by the district court in entering the temporary restraining order and the preliminary injunction.

Faced with Sardi's conflicting stories, the court ordered the parties to attempt to depose him. When their efforts failed, the court asked the parties for briefs on the

---

1. Despite the different places of incorporation of the various corporate defendants, all parties agree that Oklahoma law controls this case.

issue of the weight to be accorded the Sardi declaration. Finally, the court decided to credit the affidavit over the declaration, and it denied all of the motions to dismiss except that of Alberto Tudela.

On appeal, Rafael Tudela argues that there is no evidence in the record to justify piercing the corporate veil of the judgment debtors to impose liability on him as an individual. He also argues that he was not and has never been adequately served with process, and that his contacts with Oklahoma as the corporate representative of Hideca and Hideca Oil cannot provide a basis for the court's exercise of jurisdiction over him personally. The corporate defendants and Valdes–Fauli argue that the court's assertion of jurisdiction over them violates the Due Process Clause of the Fourteenth Amendment because they have no contacts with the state of Oklahoma. All appellants also urge that the Trustee has failed to satisfy the prerequisites for entry of a preliminary injunction: in addition to an inadequate showing on the jurisdictional issue, they argue that the Trustee has shown neither a likelihood of irreparable harm absent the injunction nor a reasonable likelihood of success on the merits.

## II *Rafael Tudela*
### A. *Sufficiency of Service*

■ We first consider Rafael Tudela's challenge to the sufficiency of the Trustee's service of process on him. We have noted that Tudela was not represented at the preliminary injunction hearing. The hearing was originally scheduled for December 29, 1986. On December 24, a process server attempted unsuccessfully to deliver the relevant documents to Tudela personally at the Sea Ranch Condominiums in Florida, where he apparently was staying. By stipulation between counsel for the corporate defendants and the Trustee, the hearing was rescheduled for January 23, 1987. The Trustee finally served process on January 21 at Tudela's usual place of

residence in Caracas, Venezuela, by leaving the papers with Dorotea Brito, Tudela's cook. Tudela did not return to his residence until January 27, four days after the hearing had been held.

■ Tudela complains in passing that the circumstances of service on him were not likely to give him actual notice of the hearing, but he does not urge reversal of the court's finding that service was proper on this basis. Instead, he argues that the service was legally insufficient because Fed.R.Civ.P. 4(d)(1) requires that service made at a person's usual place of abode must be upon an individual "residing therein," and Brito does not reside at Tudela's home.[2]

Tudela is clearly correct that the Rule's "residing therein" language "require[s] the recipient of the papers to be actually living in the same place as defendant." 4A C. Wright and A. Miller, *Federal Practice and Procedure Civil 2d* § 1096 at 81 (1987). The simple question, however, whether Brito resided at Tudela's house on January 21, 1987, is not capable of confident answer on the record the parties have created. The standard form affidavit and return of service states that process was served upon a "person residing" at the residence age fifteen or older. II R. tab 134 ex. B. The declaration of the process server, however, merely states that Ms. Brito "identified herself as the cook working for Mr. Tudela for the past Twenty years." *Id.* Thus the Trustee's own evidence creates some doubt as to whether Brito resided at the house.

In his motion to dismiss for insufficient service of process before the district court, Tudela relied upon declarations filed by himself and Brito. Tudela's declaration, however, never explicitly says that Brito does not live in his house. It merely states that he resides in Caracas with his wife and daughter, and that his "domestic," Brito, has not been authorized by him to receive

---

**2.** Tudela also argues that the service of process on him was contrary to the requirements of the state service statute. Okla.Stat.Ann. tit. 12, § 2004 E. The Supreme Court has specifically held that Fed.R.Civ.P. 4(d)(1) controls in diver-

sity actions over state statutes under the *Erie* doctrine. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The Oklahoma statute is therefore irrelevant to our determination whether service was proper.

official documents. Addendum to Brief of Defendant–Appellant Rafael Tudela tab J. Brito's declaration does state that she lives with her niece in El Llamito and works as a domestic in Tudela's house in Caracas. *Id.* tab K. This declaration, executed May 30, 1987, nowhere states that she has never lived in the Tudela home or that she did not live there on January 21, 1987.

The obvious relevance of simple, clear statements to the effect that Brito does not and never has lived in the Tudela home would be readily apparent to any lawyer preparing these declarations. The ease with which such statements, if true, could have been included is apparent. The district court may well have concluded that the absence of such statements should be construed against the declarants, and that the declarations were therefore insufficient to overcome the prima facie case of proper service established by the affidavit and return of service. In any event, the district court was required to weigh the evidence presented to it. In concluding that service was proper, it necessarily made a factual finding that Brito, at least as of January 21, 1987, resided at Tudela's home. The state of the record upon which that determination was made is charged to the parties. On the basis of that record, we cannot say that the court's finding was clearly erroneous.[3]

### B. *Personal Jurisdiction*

■ Tudela argues that the district court improperly asserted personal jurisdiction over him. The court found jurisdiction based on its conclusion that Tudela personally transacted business in Oklahoma when he appeared before the bankruptcy court in 1974 in connection with the Talon stock purchase. Tudela does not argue that this contact would be constitutionally insufficient to support jurisdiction if it was properly attributed to him personally. Rather, he urges that his 1974 appearance was solely as the representative of Hideca and Hideca Oil and that, under the fiduciary shield doctrine, exercise of personal juris-

diction over an individual may not be based solely on acts that individual performed in a purely representative capacity.

Tudela has not cited any Oklahoma cases discussing this equitable doctrine, nor has our own research uncovered any. Even if Oklahoma courts would recognize the doctrine, however, we are confident that they would not apply it in this case. The Second Circuit has cogently summarized the place of fiduciary shield analysis in alter ego cases such as this one:

"As an equitable principle, the fiduciary shield doctrine is not applied mechanically; the determination of the appropriateness of its application requires an analysis of the particular facts of the case. In each instance, fairness is the ultimate test...:.

In evaluating the fairness of subjecting an individual to personal jurisdiction for acts done in his role as a corporate employee, it is appropriate to focus not only on the fealty of the employee to the corporation in the performance of those acts, but also on the nature of the corporation and the individual's relationship to it. If the corporation is a mere shell for its owner, the employee-owner's actions may be viewed as having been taken simply in his own interest. In such circumstances it will not advance notions of fairness to allow the owner of the corporation to invoke the protections of the fiduciary shield....

In deciding whether the corporation is a real or a shell entity, the appropriate standard should not be the very stringent test, normally applied in other contexts, for piercing the corporate veil. That test requires a showing not only that the corporation is a shell, but that it was used to commit a fraud. When both of these showings are made the corporate entity is disregarded, and the individuals behind the corporate shell are held responsible for its liabilities. The fiduciary shield doctrine, however, is not concerned with liability. It is concerned with jurisdiction, and specifically with

---

**3.** Because we conclude that service was proper, and because we reverse the preliminary injunc-

tion, *see infra* Part IV, we do not address Tudela's argument under Fed.R.Civ.P. 65(a)(1).

the fairness of asserting jurisdiction over a person who is acting solely in the interests of another. In determining whether a corporation for which an owner-employee acts is really 'another,' it is sufficient to inquire whether the corporation is a real or shell entity. If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell."

*Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 903 (2d Cir.1981) (citation omitted).

■ The Trustee cannot prevail on his alter ego claims against Tudela without proving both that the judgment debtors were his instrumentalities and that he used them, in connection with the nationalization award, as part of "a design or scheme to perpetrate a fraud." *Hulme v. Springfield Life Ins. Co.,* 565 P.2d 666, 670 (Okla. 1977). To determine whether Tudela's contacts with the forum may be attributed to him personally, however, the Trustee need only demonstrate that the corporations on whose behalf Tudela was allegedly acting were in fact mere instrumentalities. We believe that, under Oklahoma law, a corporation may be deemed to be a mere instrumentality of an individual if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham. *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.,* 519 F.2d 634, 638 (8th Cir.1975) (listing each of these factors, as well as use of the corporation "to promote fraud or illegality," in case involving substantive alter ego liability under Iowa law). *See also Fish v. East,* 114 F.2d 177, 191 (10th Cir. 1940) (parent-subsidiary corporations).

With these principles in mind, we turn to an examination of the record. The burden on the Trustee at the preliminary injunction stage of this litigation was to establish a reasonable probability of ultimate success on the issue of jurisdiction when the action is tried on the merits. *See, e.g., Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 59 (2d Cir.1981). This burden was met with respect to Tudela if the record demonstrates a reasonable probability that Tudela used the judgment debtors as his instrumentalities. We review the district court's conclusion that the Trustee met this burden de novo. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir.1988). Subsidiary findings of fact and credibility determinations, of course, are reviewed under the clearly erroneous standard.

Some evidence of an instrumentality relationship is found in Sardi's affidavit. Sardi worked for Rafael Tudela from 1973–76 and from 1979–84, and was the president of Hideca Oil, one of the judgment debtors. Sardi's affidavit identifies the "Tudela Group" or "Hideca Group" of companies as a collection of more than one hundred corporations, all owned directly or indirectly by the Tudelas. Many of these corporations lacked directors; if directors were appointed they were figureheads. Final decisionmaking authority was always in the Tudelas. Corporate formalities, such as shareholders' or directors' meetings, minute books, and separate accounting books, were not generally observed, and assets were freely transferred among the corporations, without consideration, in whatever manner the Tudelas desired. The affidavit affirmed that all of the corporations listed in the draft complaint prepared by the Trustee for this litigation, and shown to Sardi, were members of the Group. Each of the judgment debtors was listed in the draft complaint. Sardi testified at the ex parte hearing on the temporary restraining order, and affirmed under oath the truth of the statements made in the affidavit.

Various exhibits were submitted in support of the Sardi affidavit, including depositions given by him in earlier litigation involving the Tudela Group. In his deposition in *Karenwood Int'l, N.V. v. Banque Worms, S.A.,* No. 84–Civ.–7803 (S.D.N.Y.), taken February 12, 1986, Sardi testified that he did not have authority as president

of the judgment debtor, Hideca Oil, to make decisions regarding transactions for the company, but that all such decisions were made by Rafael and/or Alberto Tudela. He testified that Hideca Oil had no employees, did not issue financial statements, and did not hold meetings of the board of directors.

Tudela argues that the evidentiary value of the Sardi affidavit is entirely removed by the Sardi declaration, filed June 25, 1987, in support of Tudela's "Motion to Reconsider Findings of Fact and Conclusions of Law and To Vacate Preliminary Injunction." I R. tab 80. In this declaration, Sardi contradicted virtually every material statement made in his affidavit. He declared that his earlier statements were not based upon personal knowledge, that he did not believe that any of the corporate defendants were "shams," and that he had no knowledge of their capitalization, stockholder structure, or adherence to corporate formalities. Tudela argues that this "supplementation" of Sardi's earlier statements "in essence, provided the testimony which would have been elicited upon cross-examination," and that the declaration essentially nullifies the affidavit. Reply Brief of Defendant–Appellant Rafael Tudela at 12.

The district court, in denying Tudela's motion, found that the affidavit and the declaration did not "stand on equal footing from an evidentiary standpoint." II R. tab 160 at 5. The court found the original affidavit more credible because Sardi had appeared before the court at the temporary restraining order hearing and affirmed the truth of its contents; its statements were consistent with testimony given by Sardi in two previous lawsuits, transcripts of which were filed as exhibits to the affidavit; and the affidavit was corroborated in part by the witnesses who testified at the preliminary injunction hearing.

The decision whether and how to credit contradictory testimony elicited from a single witness, such as the affidavit and declaration here, rests within the sound discretion of the district court. The court's decision to credit the affidavit over the declaration was not clearly erroneous.

At the preliminary injunction hearing, the Trustee presented the testimony of David Melendy, a former officer of Home–Stake and a certified public accountant. Melendy attended the 1974 sale of Talon stock to Hideca as a representative of the Trustee. He testified that Rafael Tudela attended the sale as the chief executive officer and major stockholder of Hideca and Hideca Oil, and that he believed Tudela to be the person with ultimate control over the activities of those companies. He had no doubt that the Talon stock nominally purchased by Hideca ultimately went to Tudela personally.

The defendants at the preliminary injunction hearing presented the testimony of Nicholas Becks, who was president of Talon when it was sold to Hideca, and who remained in that position until after nationalization of the company. He testified that he made all of the day-to-day decisions concerning Talon, and that corporate books and minutes were kept. He sent regular reports on Talon's profitability to Tudela.

We believe that this evidence, taken as a whole, suffices to establish a reasonable probability that Tudela treated the judgment debtor corporations as his instrumentalities. Accordingly, the district court did not err in refusing to allow Tudela to invoke the fiduciary shield to avoid the court's jurisdiction. We note, however, that at the trial on the merits the Trustee must prove facts sufficient to establish personal jurisdiction over Tudela by a preponderance of the evidence. *See Visual Sciences*, 660 F.2d at 58. The Sardi affidavit was admitted at the preliminary injunction hearing by stipulation of the parties for purposes of that hearing only. Nothing will prevent Tudela from challenging the admissibility of the affidavit on remand.

### III  *Valdes–Fauli*

The district court asserted jurisdiction over Valdes–Fauli, an individual with no contacts to the state of Oklahoma, because it found him to be Tudela's agent. The record contains absolutely no support for this finding. Accordingly, Valdes–Fauli must be dismissed from this action.

## IV  *The Corporate Defendants*

■ At the injunction hearing the Trustee stipulated that the corporate defendants have no contacts with the state of Oklahoma. The sole basis for asserting personal jurisdiction over these defendants was their alleged alter ego relationship to Rafael Tudela. The district court concluded that the Trustee had demonstrated a reasonable probability of an instrumentality relationship between Tudela and the corporate defendants, and that "[f]or personal jurisdiction purposes, the acts and conduct of an individual over whom the court has jurisdiction may be imputed or attributed to corporations which that individual dominates and controls to allow the court to assert personal jurisdiction over such corporations." I R. tab 35 at 21 ¶ 6. We, of course, review this legal conclusion de novo.

■ Personal jurisdiction may be exercised over a nonresident defendant in a diversity action if the defendant is amenable to service of process under the relevant state long-arm statute and if the exercise of jurisdiction under state law comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *See, e.g., Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987). Oklahoma's long-arm statute, Okla.Stat.Ann. tit. 12, § 2004 F, extends the jurisdiction of the state's courts to the limits of due process. *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1130–31 (10th Cir. 1987). Accordingly, we need only inquire whether the assertion of jurisdiction over the corporate defendants was constitutionally permissible.

■ "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (citation omitted). Jurisdiction is proper when the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Minimum contacts must be found as to each defendant over whom the court exercises jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). The unilateral activity of another party or a third person cannot provide the necessary contact with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

These basic due process requirements for the exercise of personal jurisdiction over a nonresident defendant would appear to preclude the district court's assertion of jurisdiction over the corporate defendants in this case. The Trustee argues, however, that "[s]ince the court has jurisdiction over Tudela, it has jurisdiction over the Corporate Defendants, the entities which he dominates and controls." Answer Brief of Appellee at 43. Because these entities "are merely the instrumentalities of Tudela, they are deemed through Tudela's contacts to have sufficient contact with Oklahoma to support personal jurisdiction." *Id.* This argument is essentially that Tudela and the corporate defendants are all in fact Tudela personally, not Tudela and assets owned by Tudela. The distinction is critical.

Jurisdiction over any entity, if it exists, must arise out of the entity's contacts with the forum. When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former. Indeed, our holding that the Trustee has sufficiently established that the court has personal jurisdiction over Rafael Tudela at this stage of the litigation involved imputing to him personally contacts of his which would ordinarily be deemed to be those of his corporate

employers only under the fiduciary shield doctrine. The obverse of that situation is one in which the individual alleged to dominate the corporation has no contacts with the forum, but the alter ego corporation has sufficient contacts. In these cases, courts have sometimes attributed the corporation's contacts with the forum state to the individual for jurisdictional purposes. *See, e.g., Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.,* 519 F.2d 634 (8th Cir.1975); 4 C. Wright & A. Miller, *supra,* § 1069. In such situations, attribution of contacts to the individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual. The same situation obtains in those cases holding a corporate parent to answer for conduct within the forum carried out by an alter ego subsidiary. *See generally* Casad, *Jurisdiction in Civil Actions* ¶ 4.03[4] and [5] (1983 & Supp.1986).

But the rationale of these cases does not support the proposition that, because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation. The dominated corporation does not direct and control its dominating corporate or individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego.[4] In this case, the corporate defendants are entitled to defend their status as real legal entities, separate from Tudela, in a forum with which they themselves have sufficient contacts to subject them to service of process. *Accord Zhorne v. Swan,* 700 F.Supp. 1037, 1039 (D.Minn. 1988). They have, as much as any other defendant, a constitutionally protected liberty interest in "not being subject to the binding judgments of a forum with which [they have] established no meaningful 'contacts, ties, or relations.'" *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181–82.

Essentially, by adding the corporate defendants to this suit and seeking a preliminary injunction against disposition of assets held in the name of those entities, the Trustee is attempting indirectly to execute a prejudgment attachment of real and personal property allegedly belonging to Tudela individually. "The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litigation,* 843 F.2d 821, 824 (5th Cir.1988). *See also De Beers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 222–23, 65 S.Ct. 1130, 1135–36, 89 L.Ed. 1566 (1945). If the Trustee wishes to attempt such an attachment, he must do so directly, in the place and manner appropriate for such suits. That is, if he believes these corporations are indeed the alter egos of Tudela, and that their assets are in danger of dissipation, he can bring suit in jurisdictions in which the defendant corporations have assets in the same manner as would be done in any *in rem* action. He may not achieve his desired result by suing the corporate record owners of the property in a forum with which they have no contacts, on a cause of action to which they have no relationship.

Accordingly, the preliminary injunction must be VACATED and the corporate defendants and Valdes–Fauli DISMISSED. The district court's assertion of jurisdiction over Rafael Tudela, however, is AFFIRMED, for the reasons stated above. The cause is remanded for further proceedings consistent with this opinion.

---

**4.** To the extent they have held that jurisdiction over a nonresident corporation may be based solely upon attribution of the forum contacts of its corporate parent or individual alter ego, we believe such cases as *Rea v. An–Son Corp.,* 79 F.R.D. 25 (W.D.Okla.1978), and *Rose's Stores, Inc. v. Padgett,* 62 N.C.App. 404, 303 S.E.2d 344, 348 (1983), are wrong.